The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT J. DIEDERICH, individually,

    Plaintiff,

  v.

PROVIDENCE HEALTH & SERVICES -
WASHINGTON d/b/a PROVIDENCE ST.
PETER HOSPITAL; KEVIN HAUGHTON and
JANE DOE HAUGHTON, and the marital
community; MAGGIE MILLER and JOHN
DOE MILLER, and their marital community;
LISA JOHNSON and JOHN DOE JOHNSON,
and their marital community; LOWELL
DIGHTMAN and JANE DOE DIGHTMAN, and
their marital community; GEOFF ANKENEY
and JANE DOE ANKENEY, and their marital
community; MICHAEL MATLOCK and JANE
DOE MATLOCK, and their marital community;
LORI VANZANTEN and JOHN DOE
VANZANTEN, and their marital community;
and JENNIFER PLAYSTEAD and JOHN DOE
PLAYSTEAD, and their marital community,

    Defendants.

No. CV-10-1558-RAJ

DEFENDANTS' SECOND
MOTION FOR PARTIAL
SUMMARY JUDGMENT

Noted for Hearing:  March 9, 2012

No Oral Argument Requested

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

## I.     INTRODUCTION

Although Dr. Diederich, a former resident in Providence St. Peter Hospital's ("Providence") family medicine program, has brought a host of claims against a number of defendants, his central premise is simple.  He believes that Providence removed him from its residency program in 2008 in retaliation for his having filed a 2006 disability discrimination lawsuit against Swedish Medical Center, which also removed him from its family residency program for alleged performance deficiencies.  Of course, Dr. Diederich has no proof that Providence knew about his prior suit, and he admits the same.  Dr. Diederich's claim is based entirely on supposition – he fancifully infers that Swedish's program director, who actually wrote him a letter of recommendation, subsequently and secretly sabotaged his Providence residency by alerting Providence to his prior lawsuit.

In contrast to Dr. Diederich's attempts to blame others for his failure to succeed in either of two family medicine residency programs, the undisputed evidence confirms that the only one Dr. Diederich should blame is himself.  Providence gave him multiple opportunities to correct his well-documented and long standing deficiencies.  Unfortunately, he never took responsibility for those deficiencies, and they led to unsafe practices and his justified removal from Providence's residency program.

Dr. Diederich has also sued for age discrimination, disability discrimination, and breach of contract.  He failed to raise the age claim in his EEOC charge, and otherwise has no evidence to support it.  His disability claim arises from a temporary herniated disc and an allegation that Providence regarded him as depressed.  Dr. Diederich cannot prove that either of these is a disability, much less that Providence failed to accommodate him, harassed him, or

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—1
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

1  unlawfully terminated him.  As for his contract claim, his damages, if proved, are limited to the

2  compensation remaining on his one-year contract less any interim earnings.

3         For the above reasons, and as detailed below, the defendants are entitled to summary

4  judgment of plaintiff's discrimination claims under federal and state law and to summary

5  judgment barring any contract damages beyond plaintiff's second-year residency contract.

6                                    **II.    FACTS**

7  **A.     The Parties and Procedural History.**

8         Providence is a full service hospital with 390 beds in Olympia, Washington.[1]  It has a

9  family medicine residency program that takes each resident three years to complete.

10 Declaration of Kevin Haughton ("Haughton Decl.") ¶ 2.  There are 18 residents in the program,

11 six in each year, and each successive year is referred to as R1, R2, and R3.  *Id.*  Residents do

12 not contract for the entire three years, but for a series of one-year contracts.  Plaintiff Robert J.

13 Diederich was 51 when he began as an R1 for Providence in June 2007.  Complaint, ¶¶ 1, 17.

14 There are currently five individual defendants, and they were on Providence's medical staff

15 during Dr. Diederich's residency.[2]  They are Kevin Haughton (the Program Director); Maggie

16 Miller (plaintiff's first year advisor); Lisa Johnson (the Associate Program Director); Jennifer

17 Playstead (member of plaintiff's appeal board); and Lowell Dightman (member of plaintiff's

18 appeal board).

19        The following claims remain against Providence:

20        1.      Disability discrimination under the American Disabilities Act ("ADA") and the
                  Washington Law Against Discrimination ("WLAD");

21

22 ─────────────────
   [1] *See* Declaration of Mary Mertens in Support of Defendants' Motion for Partial Summary Judgment and Motion
   to Dismiss Individual Defendants, ECF No. 33, ¶ 2.
23 [2] Plaintiff never served two defendants, Lori Van Zanten and Geoffrey Ankeney, and he says that he is nonsuiting
   Michael Matlock, a third defendant, because Dr. Matlock did not vote against him on his appeal.  *See* Plaintiff's
   Motion to Supplement, ECF No. 45, pg. 3.

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—2
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

2.      Retaliation under the ADA and the WLAD;

3.      Age discrimination under the Age Discrimination in Employment Act ("ADEA") and the WLAD;

4.      Breach of contract under state law.

The only remaining claims against the individual defendants are for age discrimination, disability discrimination, and retaliation under the WLAD.

Providence and the individual defendants have already moved for the dismissal of all WLAD claims on the grounds that Providence is a nonprofit religious organization that is exempt from the WLAD. Because that motion is still pending, they also move for dismissal of the WLAD claims on substantive grounds not enumerated in their first motion. In addition, Providence moves for dismissal of the same state law claims, for dismissal of plaintiff's federal claims, and for an order limiting plaintiff's contract damages.

**B.      First Termination from a Residency Program and First Lawsuit.**

Before he was a Providence resident, Dr. Diederich was a Swedish resident for 11 months. Diederich Dep. 53:4-13.[3] He says Swedish terminated him while on leave for depression and "made something up about … deficient performance." Diederich Dep. 53:19-25. After exhausting his internal appeal rights, he sued Swedish in February 2006 for disability discrimination and received about $145,000 from an early settlement agreement. Diederich Dep. 55:2-15, 59:22-24. The agreement contained a confidential anti-disparagement clause and required Sam Cullison, the Program Director, to write him a letter of recommendation. Diederich Dep. 60:21-61:10; Gaviria Decl. Ex B.

---

[3] Excerpts from the Deposition of Dr. Diederich ("Diederich Dep.") are attached to the Declaration of Boris Gaviria ("Gaviria Decl.") as Exhibit A.

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—3
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

**C.     Plaintiff's Professionalism and Practice Issues at Providence.**

Later that year, plaintiff submitted Dr. Cullison's letter and listed him as a reference in his application to enter a new residency program as an R1 in family medicine.  Diederich Dep. 50:17-20; 63:20-25.  Haughton Decl. ¶ 3, Ex. 1.  Plaintiff was chosen for the residency program by Dr. Haughton, Providence's Program Director.  *Id.*  Dr. Diederich signed a one-year contract from June 18, 2007 until June 30, 2008.  *Id.*, Ex. 2.

After six months, Providence identified ongoing concerns with Dr. Diederich's performance and professionalism.  Haughton Decl. ¶ 4; Ex. 3.  Dr. Haughton and Dr. Miller, his first-year advisor, met with Dr. Diederich on December 19, 2007 and recommended remediation, a non-disciplinary, non-adversarial program for residents who need help. Haughton Decl. ¶ 4; Exs. 3, 4, and 5; Haughton Dep. 88:22-89:10.[4]  Dr. Miller identified the following deficiencies at the meeting:  poor documentation, incomplete and unorganized presentations, defensive attitude, deflecting blame, disrespectful remarks, and cynical comments about the program.  *Id.*

Dr. Miller continued meeting with Dr. Diederich to implement his remediation plan. Haughton Decl. ¶ 5, Exs. 6 and 7.  But after a couple months, his "issues remain[ed] a strong concern among the faculty."  Haughton Decl. ¶ 6, Ex. 8.  On February 28, 2008, the faculty decided that "these issues will now move into the Step 1 disciplinary process."  *Id.*  Dr. Miller informed Dr. Diederich, gave him a copy of Providence's disciplinary process, and told him that an Ad Hoc Advisory Committee would create its own remediation plan.  *Id.*  Dr. Diederich called in sick the next day.  *Id.*, Exs. 9 and 10.

---

[4] Excerpts from the Deposition of Kevin Haughton ("Haughton Dep.") are attached as Exhibit C to the Gaviria Decl.

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—4
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

1    Although the applicable policy required Dr. Miller to choose the final member of the

2    Ad Hoc Advisory Committee, she allowed Dr. Diederich to choose.  Diederich Dep. 72:10-17.

3    The three members met with Dr. Diederich and reported to Dr. Haughton.  Haughton ¶ 8,

4    Ex. 11.  The identified competency concerns were the same as previous ones:  poor

5    professionalism, poor interpersonal skills, and poor communication.  *Id.*

6    Dr. Miller and others continued to work with Dr. Diederich.  Haughton ¶ 9, Ex 12.

7    Still, he struggled.  In March, he abruptly departed one day for emergency sick leave without

8    adequately handing off his patients.  Haughton Decl. ¶ 10, Ex. 13.  In response to this serious

9    and unusual incident and other concerns, Dr. Diederich was placed on probation.  Haughton

10   Decl. ¶ 11, Ex. 14.  Dr. Miller and Dr. Haughton met with him the next day, March 27, 2008.

11   Dr. Miller memorialized the meeting.  Dr. Miller wrote, "Dr. Diederich expressed

12   understanding that he was now on probation pending the satisfactory completion of all the

13   concerns raised."  Haughton Decl. ¶ 12, Ex. 15.  Dr. Diederich was given a copy of the meeting

14   summary.  Ex. 15.

15   Dr. Diederich substantially complied with his probation plan, and, in mid-May, returned

16   to "usual residence status."  Haughton Decl. ¶ 13, Ex 16.  Dr. Haughton renewed

17   Dr. Diederich's contract for a second year.  Haughton Decl. ¶ 14, Ex. 17.  At the end of June,

18   DelRene Davis became his new advisor and Lisa Johnson, as Assistant Program Director,

19   partly took over Dr. Haughton's responsibilities while he was unavailable.  Diederich

20   Dep. 95:13-15; Haughton Decl. ¶ 15; Johnson Dep. 20:13-21:8[5].

21   Despite these changes, the earlier concerns surfaced again, first as part of his quarterly

22   review and later about professionalism issues that led to "unacceptable patient care."  Haughton

23

---

[5] Excerpts from the Deposition of Lisa Johnson ("Johnson Dep.") are attached to Gaviria Decl. as Exhibit D.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

1    Decl. ¶ 16, Exs. 18 and 19.  On July 5, contrary to hospital policy, he abandoned his duty as an

2    R2 to admit a patient and instead left the responsibility to an R1.  Haughton Decl. ¶ 17, Ex. 20;

3    Diederich Dep. 104:17-105:12.  The faculty met on July 23 and raised concerns about "his

4    functioning within the program," specifically his unprofessionalism and problems interacting

5    with co-workers.  Haughton Decl. ¶ 18, Ex. 21.  They discussed probation, but settled on

6    Step 1.  Providence created a second Ad Hoc Advisory Committee and another remediation

7    plan for Dr. Diederich.  Haughton Decl. ¶ 19, Ex. 22.

8         **D.    Plaintiff's Termination & Appeal.**

9         In late August and early September 2008, three new issues arose, which led to

10   Dr. Diederich's termination from the residency program.  Haughton Dec. ¶ 20, Exs. 23 and 24.

11   First, Dr. Diederich failed to follow up on a pediatric respiratory distress admission for six

12   hours.  *Id.*  Second, Dr. Diederich failed to notify his attending of an obstetrical laceration

13   repair on a precipitous delivery, despite the charge nurse's reminder that he needed to do so.

14   *Id.*; Diederich Dep. 224:4-25.  Third, Dr. Diederich ignored the same nurse's request that he

15   use sterile gloves during the same repair.  *Id.*; Diederich Dep. 228:24-229:6.  All three incidents

16   violated hospital protocols and created serious patient safety risks.  *Id.*

17        The faculty concluded that his ongoing behavior and the three incidents justified

18   removal from the program.  Haughton Decl. ¶ 21, Ex. 25.  Dr. Haughton agreed.  *Id.*

19   Dr. Diederich was terminated on September 12.  Haughton Decl. ¶ 22, Ex. 26 and 27.  He

20   received a copy of the Disciplinary and Due Process Policy and notice of his right to appeal

21   during his termination meeting.  *Id.*

22        Dr. Diederich appealed.  Ms. Lori Van Zanten told him how the process worked,

23   granted him accommodations to the process, and told him he had a right to "cover any matters

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—6
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

raised at any step in the process up to this point," which included the right to contest any

factual or procedural matters.  Haughton ¶ 23, Ex. 28.  Dr. Diederich was given documents that

the appellate board was going to consider in its decision.  *Id.*  His appellate board included

Jennifer Playstead, Michael Matlock, Lowell Dightman, Lori Van Zanten, and Geoffrey

Ankeney.  *Id.*  Dr. Diederich was also allowed to and did (1) submit a personal written

statement and rebuttal of the reasons for terminating him, (2) speak to the panel, and (3) offer

live and written witness statements.  *Id.*

Later, the appellate board asked for factual clarification and for additional documents

related to ongoing performance and professionalism issues.  Haughton Decl. ¶ 24, Ex. 29.

After reviewing all the circumstances regarding his termination, the appellate board upheld his

termination by a vote of four-to-one and issued a five-page report of their findings.  Haughton

Decl. ¶ 25, Ex. 30.

### E.  Plaintiff's Alleged Disabilities.

Plaintiff alleges two disabilities in his lawsuit:  a herniated disc, and perceived or

regarded-as depression, when he was not depressed.  Diederich Dep. 236:20-237:9.

### 1.  Plaintiff's Herniated Disc.

Dr. Diederich began experiencing neck pain in June 2008.  Diederich Dep. 237:13-21;

Haughton Decl. ¶ 26, Ex. 31.  Although surgery was not his goal, he changed his mind, did not

tell anyone at Providence, and instead requested vacation time with his children for August 7 to

August 15.  Haughton Decl. ¶ 27, Ex. 32.  On August 1, shortly after his request for vacation

was denied, he asked for leave from August 7-17 for an operation.  Haughton Decl. ¶ 28,

Ex. 33.  Providence granted him the 11 days off.  *Id;* Diederich Dep. 95:20-25.

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—7
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

Before his operation, Dr. Diederich had attributed some performance issues to "grumpiness" caused by neck pain (and sleep apnea). Haughton Decl. ¶ 29. Providence asked about potential accommodations, but he "refused because he [did] not want to 'hassle with HR.'" *Id.*, Exs. 21, 33, and 34. After surgery, he did not need or ask for accommodation: "I didn't feel that I needed any accommodation, other than an acknowledgment that I was in pain. . . . I thought I was able to do all the essential functions of my work." Diederich Dep. 97:3-11.

In fact, surgery more or less corrected his problems. Diederich Dep. 237:13-23. Although his arm contracted occasionally for six weeks post-surgery, this was merely "a little disconcerting." Diederich Dep. 239:16-22. He has minor residual pain and numbness, but admits, "I don't feel that it impairs me in any way, it's just a different sensation." Diederich Dep. 239:3-9. Plaintiff's written statement to the appeals board did not discuss or mention neck pain, which is consistent with board members' recollection that it was not a factor in their decision. Haughton Decl. ¶ 30, Ex. 35; Playstead Dep. 24:18-26:22; Matlock Dep. 23:18-25:5.[6]

## 2. Plaintiff's Regarded-As Depression.

When Dr. Diederich applied to Providence he disclosed that he had previously suffered from depression. Haughton Decl. ¶ 31; Diederich Dep. 164:10-16. In addition, Dr. Cullison's letter of recommendation mentioned that while at Swedish "Bob went on medical leave due to depression." Gaviria Decl. Ex B. According to plaintiff, he was asked if he was depressed about "half a dozen times" during his fourteen months at Providence. Diederich Dep. 164:5-7. According to plaintiff, these inquiries were too "perfunctory." Diederich Dep. 165:1-5. These inquiries occurred because Dr. Diederich previously raise the issue. Haughton Decl. ¶ 31.

---

[6] Excerpts from the Deposition of Jennifer Playstead ("Playstead Dep.") and the Deposition of Michael Matlock ("Matlock Dep.") are attached to the Gaviria Decl. as Exhibits E and F, respectively.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

**F.      Plaintiff's Claim that Providence Knew He Had Sued Swedish.**

Dr. Diederich alleges that Dr. Cullison told Providence about his prior suit against Swedish and Dr. Cullison.  The deposed witnesses deny learning of the suit before plaintiff's termination.  Haughton Dep. 24:10-25:3; Johnson Dep. 19:4-12; Dightman Dep. 46:17-21; Miller Dep. 30:3-9[7].  Dr. Diederich has testified that "I don't know if Dr. Cullison shared information" with Providence.  Diederich Dep. 269:10-16.  He has also testified that no one at Providence said anything to him about the suit.  Diederich Dep. 156:12-15.

Dr. Diederich bases his belief that Providence knew on the following:

- **Dr. Lisa Johnson.**  Dr. Diederich claims Dr. Johnson knew of his suit because of her ties to Swedish:  "I believe because of her close ties to her *alma matter* that she … obtained knowledge of my anti-discrimination lawsuit against Swedish."  Gaviria Decl. Ex. I.  Dr. Johnson finished her residency in 1981 at Providence Hospital; it did not become a Swedish facility until after she left.  Johnson Dep. at 8:20-9:18.

- **Dr. Maggie Miller.**  During a meeting with his first Ad Hoc Advisory Committee, Dr. Miller told him that the courts have said Providence could do what it wanted.  Diederich Dep. 73:24-75:8.  To Dr. Diederich, the word "courts" implied that she knew he had sued Swedish.  Diederich Dep. 73:24-74:20.

- **Dr. Lowell Dightman.**  At plaintiff's appeal hearing, Dr. Dightman asked him to explain his struggles in light of his inability to complete his Swedish residency.  Diederich Dep. 52:11-18.  He claims Dr. Dightman should not have known this.  *Id.*  But Providence knew that plaintiff was unsuccessful at Swedish when he applied to Providence.  Dightman Dep. 42:2-23; Gaviria Decl. Ex. B.

- **Dr. Kevin Haughton.**  According to plaintiff, sometime six months into his residency, Dr. Haughton said, "I talked to Sam Cullison.  I know all about you."  Diederich Dep. 270:19-25.  Dr. Haughton only knew Dr. Cullison professionally.  Haughton Dep. 20:25-21:9.  Plaintiff speculates they discussed him in December 2007 during a quarterly meeting for residency program directors.  Diederich Dep. 240:18-241:4.  By mutual agreement, program directors do not discuss individual residents.  Haughton Dep. 22:16-25.  Dr. Haughton denies talking with Dr. Cullison and denies making the statement Dr. Diederich alleges he made.  Haughton Dep. 25:4-11, 21:22-22:2.

---

[7] Excerpts from the Deposition of Lowell Dightman ("Dightman Dep.") and the Deposition of Maggie Miller ("Miller Dep.") are attached to the Gaviria Decl. as Exhibits G and H, respectively.  Playstead and Matlock were not asked.

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—9
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

**G.      Plaintiff's EEOC Charge.**

Dr. Diederich filed an EEOC intake questionnaire on March 27, 2009.  Gaviria Decl.

¶ 10, Ex I.  He did not check the box for ADEA age discrimination.  Instead, he checked the

boxes for disability and retaliation.  *Id.*  His attached narrative did not allege age

discrimination.  *Id.*  Dr. Diederich later signed a charge for only retaliation and disability

discrimination.  Gaviria Decl. ¶ 11, Ex. J.  After investigating the charge, the EEOC dismissed

plaintiff's retaliation and disability claims.  Gaviria Decl. ¶ 12, Ex K.  It then issued

Dr. Diederich a right-to-sue letter for the claims he had raised in his charge.  Gaviria Decl ¶ 13.

## III.      ARGUMENT AND AUTHORITY

**A.      Dr. Diederich's disability claims should be dismissed because he was not disabled, and even if he was, he was not denied accommodation, was not harassed, and was not terminated because of a disability.**

"[T]he existence of a 'disability' is a gateway requirement for the ADA."  *EEOC v.*

*United Parcel Serv., Inc.*, 306 F. 3d 794, 797 (9th Cir. 2002).  Despite recent amendments to

the definition of "disability," those amendments are not retroactive and do not apply to

plaintiff's federal claims.  *Becerril v. Pima Cnty. Assessor's Office*, 587 F. 3d 1162, 1164 (9th

Cir. 2009).  To establish an ADA disability, Dr. Diederich must prove one of the following:

"(A) a physical or mental impairment that substantially limits one or more of the major life

activities of such individual; (B) a record of such an impairment; or (C) being regarded as

having such an impairment."  42 U.S.C. § 12102(2).  Dr. Diederich claims that his herniated

disc was a physical impairment that substantially limited a major life activity.  He further

claims that Providence improperly  regarded him as depressed.  Neither of these qualifies as an

ADA disability.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

1    Although his herniated disc was a physical impairment, "[m]erely having an impairment

2  does not make one disabled." *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 195 (2002).  The

3  impairment must "severely restrict the individual from doing activities that are of central

4  importance to most people's daily lives." *Id.* at 198. It "must also be permanent or long-term."

5  *Id.*  The Ninth Circuit agrees that "a temporary injury with minimal residual effects cannot be

6  the basis for a sustainable claim under the ADA." *Sanders v. Arneson Prods., Inc.*, 91 F.3d

7  1351, 1354 (9th Cir. 1996).  Thus, in *Sanders*, summary judgment was appropriate because the

8  employee's cancer-related psychological impairment—a three-and-a-half month condition—

9  "was not of sufficient duration to fall within the protections of the ADA as a disability." *Id.*

10    Dr. Diederich's herniated disc was more temporary than the condition in *Sanders*, so it

11  cannot be a disability.  It began in June and ended with surgery on August 7.  Although his arm

12  occasionally contracted for another six weeks, "physical impairments while recuperating from

13  surgery are not evidence of a permanent disability." *Pollard v. High's of Baltimore, Inc.*, 281

14  F.3d 462, 468 (4th Cir. 2002) (holding plaintiff did not have disability, despite four-month back

15  injury followed by nine-month recovery from surgery).  Even if post-surgery impairments

16  could establish a disability, plaintiff's six-week recovery puts his condition at only three-and-a-

17  half months, the same as in *Sanders*.  Further, his impairments—before and especially after

18  surgery—were not substantially limiting.[8]

19    Dr. Diederich's claim that he had a "regarded-as" disability also fails.  A person is

20  "regarded as" disabled if the employer mistakenly believes the person has an impairment that

21  substantially limits a major life activity.  *EEOC v. United Parcel Serv., Inc.*, 306 F. 3d 794,

---

[8] Even under the ADAA's new definition of "disability," short-term impairments are not covered unless they are
severe. 29 C.F.R. Pt. 1630, App'x. Thus, plaintiff's claim would not qualify under *any* federal definition of
disability. But for purposes of summary judgment, Providence accepts that under Washington law plaintiff's
herniated disc and regarded-as depression qualify as disabilities.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

803 (9th Cir. 2002).  Dr. Diederich has no evidence that Providence thought he was substantially limited in performing a major life activity.  Providence asked him if he was depressed on occasion, but inquiring about a person's condition is not tantamount to regarding him as disabled.  *Id.* at 805; *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir. 2001) ("[W]hen an employer takes steps to accommodate an employee's restrictions, it is not thereby conceding that the employee is disabled under the ADA or that it regards the employee as disabled.").

Even if Dr. Diederich had a disability, he cannot establish a triable issue on his federal and state claims for failure to accommodate, harassment, and termination.

### 1.  Dr. Diederich's failure-to-accommodate claim fails because he was in fact accommodated or did not need an accommodation.

Plaintiff's lone claim here is that he needed time off to accommodate his herniated disc.[9]  But he admits that he was accommodated:  "I was given time off for surgery, I had surgery on August 7th, and that included a recuperation period, yes."  Dr. Diederich rebuffed Providence's other pre-surgery inquiries about additional accommodation because it would be too much of a "hassle" to deal with HR.  He also concedes that he did not need or ask for any post-surgery accommodation, so there was nothing to accommodate.[10]

### 2.  Dr. Diederich's harassment claim fails because he never experienced severe and pervasive abuse.

A harassment claim exists only if the plaintiff "was subjected to verbal or physical conduct" so severe or pervasive that it led to an abusive working environment.  *See Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998).  The employer's harassing conduct must be

---

[9] A "regarded-as" disability may not be the basis of an accommodation claim, so plaintiff's regarded-as depression is not at issue here.  *Kaplan v. City of North Las Vegas*, 323 F. 3d 1226, 1232-33  (9th Cir. 2003).

[10] In Washington, accommodation law is substantially similar.  A plaintiff only has a viable claim if the employer failed to affirmatively adopt measures that were available and necessary to accommodate the impairment.  *Riehl v. Foodmaker, Inc.*, 152 Wn.App. 138, 94 P.3d 930, 934 (Wash. 2004).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

1   related to plaintiff's membership in a protected class. *See id.*[11]  And it must be subjectively and

2   objectively abusive. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  To determine if a

3   harassment claim exists, a court  will examine "the frequency, severity, and nature (i.e.,

4   physically threatening or humiliating as opposed to merely verbally offensive) of the conduct."

5   *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).

6           Dr. Diederich's harassment claim consists primarily of verbal incidents that had nothing

7   to do with his neck or depression.  In fact, the only disability-related conduct plaintiff points to

8   are a "half-dozen" inquiries about depression.  These inquiries, if true, are not harassing

9   because Dr. Diederich admits they were merely "perfunctory."  A reasonable person would

10  view them as a manifestation of concern.  After all, Dr. Diederich disclosed his own history of

11  depression to Providence before he was hired.  Thus, a handful of follow up inquires about his

12  condition over fourteen-months are not surprising and certainly not evidence of harassment.[12]

13          **3.      Dr. Diederich's termination claim fails because Providence had**
                      **legitimate nondiscriminatory reasons for his termination.**

14          Dr. Diederich's final claim is that he was disciplined and terminated because of his

15  herniated disc and his perceived depression, but he cannot show that a reasonable jury could

16  believe that Providence was motivated by any discriminatory animus in its actions.

17          The applicable legal standard is the *McDonnell-Douglas* burden-shifting framework.

18  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003).  This standard, because it is procedural,

19  applies to Dr. Diederich's state and federal claims.  *Snead v. Metro. Prop. and Cas. Ins. Co.,*

20

---

21  [11] Washington law is the same as federal law on this element and the others. *See Robel v. Roundup Corp.*, 148

22  Wn.2d 35, 59 P.3d 611, 617 (Wash. 2002) ("This element thus requires a nexus between the specific harassing conduct and the particular injury or disability").

23  [12] Plaintiff seems to argue that Providence's denial of his vacation request was harassment, but this had nothing to
    do with his alleged disability.  Instead of just requesting medical leave, he told Providence that he needed vacation
    with his children.  Notably, once he told Providence that he needed surgery, it is undisputed that  he was
    immediately granted time off.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

1  237 F.3d 1080, 1092 (9th Cir. 2001).  For summary judgment purposes, Providence assumes

2  that plaintiff has made out a prima facie case and moves to its burden to offer legitimate

3  reasons for terminating plaintiff.  540 U.S. at 55.  To meet this burden, the employer need only

4  set forth "reasons for its employment decision which, *if believed by the trier of fact*, would

5  support a finding that the employment action was not a result of unlawful discrimination."

6  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) (emphasis in original).

7       Providence easily satisfies this burden.  It is undisputed that plaintiff had a well-

8  documented history of practice and professionalism issues.  It is undisputed that plaintiff was

9  the subject of innumerable complaints, disciplinary action, and remediation plans.  It is

10  undisputed that his reported misconduct led to two Ad-Hoc Advisory Committees, multiple

11  one-on-one sessions with advisors, and frequent faculty meetings.  It is undisputed that his

12  ongoing issues culminated in complaints about his refusal to wear sterile gloves, call his

13  attending for a laceration repair, and properly admit an infant patient in respiratory distress.

14       The same-actor inference bolsters the legitimacy of these nondiscriminatory reasons for

15  terminating Dr. Diederich.  The inference applies when the same person hires and terminates an

16  employee with knowledge of the employee's protected status.  *Bradley v. Harcourt, Brace &*

17  *Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  In such a situation, "a strong inference arises that there

18  was no discriminatory motive."  *Id.*  The employee cannot overcome the inference without an

19  "extraordinarily strong showing of discrimination."  *Coghlan v. Am. Seafoods Co. LLC.*, 413

20  F.3d 1090, 1097 (9th Cir. 2005).  Typically, the employee must "answer an obvious question: if

21  the employer is opposed to employing persons with a certain attribute, why would the employer

22  have hired such a person in the first place?"  *Griffith v. Schnitzer Steel Indus., Inc.*, 128

23  Wn.App. 438, 115 P.3d 1065, 1073 (Wash. Ct. App. 2005).  Not surprisingly, "*rarely*" is a

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—14
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

1  plaintiff's evidence enough to overcome the same-actor inference. *Coghlan* 413 F.3d at 1097

2  (emphasis in original).

3  Viewed through the prism of the same-actor inference, Dr. Diederich's claim defies

4  common sense. He asks the Court to hold that a reasonable jury could believe Dr. Haughton

5  hired him with knowledge of his depression, but then discriminated against him because of it.

6  Compounding the problem with plaintiff's theory is that *after* the alleged discrimination began,

7  Dr. Haughton's animus abated enough for him to return Dr. Diederich to regular residency

8  status and renew his contract for another year. Following plaintiff's illogical theory to the end,

9  only four months later, Dr. Haughton's bias against depressed people somehow reappeared,

10  when he decided to officially terminate Dr. Diederich.

11  Although the same-actor inference does not apply directly to plaintiff's claim based on

12  his herniated disc, it does by analogy. If a strong inference exists that Dr. Haughton did not

13  harbor discriminatory animus towards depressed people, then it seems unlikely that he was

14  somehow predisposed to harbor a bias towards people with herniated discs. Further

15  undermining plaintiff's claim based on his neck condition is that six months of his discipline

16  predates the condition's onset. The disciplinary issues that existed before Dr. Diederich

17  herniated his disc are the same type of issues that arose after the condition, making it unlikely

18  that the subsequent discipline and ultimate termination were discriminatory.

19  A related point favoring summary judgment is that "[f]avorable treatment of a person in

20  a protected class by the alleged discriminator creates a strong inference that there was no

21  discrimination." *Jamal v. Wilshire Mgmt. Leasing Co.*, 320 F. Supp. 2d 1060, 1077 (D.C.Or

22  2004). Here, Providence returned plaintiff to regular residency status and renewed his contract.

23  Providence also allowed him to select one member of his Ad-Hoc Advisory Committees. Lori

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

1   Van Zanten granted Dr. Diederich accommodations to the appeals process.  In addition, the

2   record contains many positive comments about plaintiff and reveals that Providence wanted

3   him to succeed.  That he did not was his own doing; it had nothing to do with discrimination.

4       Moreover, the record demonstrates that Dr. Diederich's disabilities had nothing to do

5   with his discipline, termination, or appeal.  Instead of focusing on his disabilities, the decision-

6   makers focused on his performance.  Recently, plaintiff made great hay of the fact that the

7   appeals board *did not consider* his neck pain in its decision.[13]  This judicial admission suggests

8   discriminatory intent was absent, not present.  Although plaintiff implies that his neck surgery

9   should have been a mitigating factor for the appellate board, he cannot have it both ways.  He

10  cannot argue that Providence failed to consider his disability, yet simultaneously claim that he

11  was terminated because of it.

12      Although Dr. Diederich will contest each and every record of his poor performance, he

13  must do more than show that the reasons for discipline and termination were "objectively

14  false." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002).  The

15  employer only has to have "honestly believed its reason for its actions, even if its reason is

16  foolish or trivial or even baseless." *Id.* (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727,

17  733–34 (7th Cir.2001)).  In this case, Providence believed it did the right thing, and in fact, it

18  did the right thing.  The three immediate reasons for Dr. Diederich's discharge—like his

19  previous misconduct—began with complaints from nurses and doctors, and these complaints

20  arose shortly after plaintiff was returned to Step 1 for the second time.  Lisa Johnson, the acting

21  program director brought these complaints to the faculty.  Ten faculty members met about these

22  issues, and by consensus, they recommended termination.  Dr. Haughton agreed.  The appellate

23

---

[13] *See* Plaintiff's Motion to Supplement, ECF No. 45, pgs. 10-11.

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—16
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

1  board affirmed his decision four-to-one after hearing and reading Diederich's lengthy written

2  rebuttal.  The decision went through many people and their solidarity is telling.  Even

3  Dr. Matlock, who voted for Dr. Diederich on appeal, acknowledged that the issues "were very

4  real and substantive issues."[14]

5  **B.      Dr. Diederich's retaliation claim fails because he cannot prove that**
          **Providence knew about his prior suit and because Providence had**
6          **legitimate nondiscriminatory reasons for terminating him.**

7      To establish a retaliation case, the plaintiff must first prove (1) he engaged in protected

8  activity , (2) the employer subjected him to an adverse employment decision, and (3) there was

9  a causal link between the two.  *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272

10  F.3d 1136, 1140-41 (9th Cir. 2001).  If there is a prima facie case, the defendant must offer

11  nondiscriminatory reasons for its decision.  *Id.* at 1141.  The burden then shifts back to the

12  plaintiff, who must establish that the employer's reasons were pretext for a retaliatory motive.

13  *Id.*[15]  In this case, Dr. Diederich cannot establish the third element of his prima facie case or

14  that Providence's reasons were pretext.

15  **1.      Dr. Diederich's prima facie retaliation claim fails because**
          **Providence did not know he had sued his prior residency program.**

16      "Essential to a causal link is evidence that the employer was aware that the plaintiff had

17  engaged in the protected activity."  *Cohen v. Fred Meyer, Inc.*, 686 F. 2d 793, 796 (9th Cir.

18  1982).  In this case, this evidence is absent.  The defendants deny knowing that he had sued

19  Swedish and Dr. Cullison in 2006, and none of their documents reveals that they knew.

20  Dr. Diederich also admits that they never said anything directly to him about the suit.

21

22  ─────────────────────

[14] Matlock Dep. at 34:16-21.

23  [15] Washington's retaliation test is the same as that under federal law, so the same analysis applies to plaintiff's WLAD claims.  *See Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn.App. 765, 249 P.3d 1044, 1053 (Wash. Ct. App. 2011).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

1    Yet, plaintiff only speculates that Providence knew about his first lawsuit.  First, he

2  claims Dr. Johnson must have known because she has "close ties" to a residency program that

3  she finished in 1981, more than twenty-five years before Dr. Diederich's termination and at a

4  hospital that was not a Swedish facility when she was a resident.  This allegation reveals

5  nothing more than the extent of plaintiff's speculation and paranoia.  Second, he claims

6  Dr. Miller knew because she used the word "courts" around him, but on its face her statement

7  does not imply that she knew he had sued the Swedish residency program.  Third, he claims

8  that Dr. Dightman asked him to explain his issues in light of his inability to complete his

9  Swedish residency.  Dr. Dightman's reference to the prior residency is entirely consistent with

10  plaintiff's own disclosures to Providence and with Dr. Cullison's recommendation letter, which

11  said that plaintiff was "unsuccessful" at Swedish.

12    As his final piece of "evidence," plaintiff offers Dr. Haughton's alleged statement that

13  he had talked to Dr. Cullison and learned about Dr. Diederich.  The timing of this so-called

14  conversation between Drs. Haughton and Dr. Cullison and the subsequent relay of it to plaintiff

15  are murky.  Dr. Diederich cannot identify when the two met other than to say he believes it was

16  December 2007, and he cannot identify when Dr. Haughton talked to him.  In addition, literally

17  interpreted, the statement does not convey that Dr. Cullison said anything about plaintiff's suit.

18  Plaintiff concedes the same:  "I don't know if Dr. Cullison shared information."[16]  Had

19  Dr. Cullison done so, he would have violated his settlement agreement's confidentiality clause

20  and nullified his own letter of recommendation, which plaintiff used to gain admission to

21  Providence.  Of course, plaintiff never followed up with Dr. Cullison about whether he said

22

23

---

[16] Diederich Dep.. at 269:16.

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—18
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

1   anything because, according to him, Dr. Cullison probably would have lied.  Diederich

2   Dep. 269:24-270:7.  Nor did Dr. Diederich ever raise the issue with Providence.

3          **2.      Dr. Diederich's retaliation case also fails because Providence did not
              terminate him with retaliatory intent and had legitimate reasons for
4             his termination.**

5          Even if Dr. Diederich can establish that a reasonable jury could find that Providence

6   knew about his prior suit, he cannot establish that Providence had a retaliatory motive in

7   disciplining and terminating him.  Providence's legitimate reasons for its conduct, set forth

8   earlier, apply with equal force here and require dismissal of plaintiff's state and ADA

9   retaliation claims.  *See supra* § A, 3.

10  **C.     Dr. Diederich failed to raise his ADEA claim in his EEOC charge, and he
          has no evidence to support an age discrimination claim under state law.**

11         Failure to raise a claim in an EEOC charge bars a subsequent suit on the claim.  *Shah v.*

12  *Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268, 271-272 (9th Cir.1981).  Dr. Diederich never raised

13  his ADEA claim to the EEOC, so his ADEA claim should be dismissed.  Although his state law

14  claim does not require an EEOC filing, the lack of one suggests there is no viable claim

15  here.  Further, because Dr. Haughton knew plaintiff's age when he hired him, the same-actor

16  inference applies.  *See Griffith*, 115 P.3d at 1073 (Wash. Ct. App. 2005).  The inference related

17  to favorable treatment also applies, given that age obviously was not an issue when Providence

18  renewed plaintiff's contract.  On a related note, because Dr. Diederich was essentially the same

19  age when he was hired and terminated, age discrimination is unlikely.  Finally, Dr. Diederich

20  has no proof of any ageist comments or that Providence otherwise discriminated against him

21  because of his age.

22

23

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—19
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

**D.      Dr. Diederich's contract claim is limited to damages for the remaining balance of his R2 contract less interim earnings.**

Plaintiff argues that his contract claim entitles him to damages for the remaining balance of his R2 contract, the entirety of his R3 contract, and loss of future earning capacity after his residency.  As a matter of law, his damages are limited to compensation for the nine months he had left on his second-year contract.

In Washington, an employee with a fixed-term contract, even if it is ordinarily renewable, is limited to damages for the unpaid balance remaining on the contract.  *McAnulty v. Snohomish Sch. Dist. No. 201*, 9 Wn.App. 834, 515 P.2d 523 (Wash. Ct. App. 1973).  In *McAnulty*, a teacher successfully argued that his school district did not properly serve him with notice of his discharge.  The trial court awarded damages for the balance remaining on his one-year contract.  On appeal, the plaintiff argued he was entitled to damages for future contract renewals.  The court of appeals disagreed:  "Although an improperly discharged teacher should recover all damages caused by his discharge, the mere expectancy of employment is not sufficient to award contract damages for the distant future."  *Id.* at 525 (citations omitted).

Similarly, mere expectancy of employment, even if accompanied by an employer's promise, does not entitle a plaintiff to future earnings.  *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 43 P.3d 1223 (2002).  In *Ford*, the plaintiff was fired from an at-will position for smelling like alcohol.  The employer promised to rehire him for the same position if he completed rehab.  When the employee returned from rehab, he was offered a lower-paying job.  The employee refused and sued for breach of contract.  The employee could not recover his lost earnings because "a contract confers no greater rights on a party than it bargains for."  *Id.* at 1228.  The parties had an at-will contract, so the plaintiff had no expectation of lost earnings, *despite* the promise of future employment.  *Id.* at 1229.

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—20
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

1      *McAnulty* and *Ford* preclude Dr. Diederich's attempt to recover damages for beyond his

2      third-year contract.  If the teacher in *McAnulty* could not recover for future contract renewals,

3      even though teaching contracts are ordinarily renewed, then plaintiff cannot collect the same

4      damages, even though residency contracts are ordinarily renewed.  And just as the employee

5      and employer in *Ford* could terminate their at-will agreement at any time, Providence and

6      Dr. Diederich had every right not to renew their contract for a third year.  A decision by either

7      party not to renew the contract would not give the other party a right to damages for

8      nonrenewal, so there is no cause to support a claim here.  Had the parties intended a three-year

9      residency contract, rather than a series of one-year contracts, they would have executed a

10     contract to that effect.  But they did not.  All they bargained for was a second one-year contract;

11     specifically, one year of performance in consideration for one year of compensation.  Because

12     that was all they bargained for, Dr. Diederich has no expectation for damages that extend

13     beyond his second-year contract.

14     Moreover, an order limiting his expectation damages to the second-year contract would

15     follow not only Washington precedent, but also the law in other jurisdictions.  *See, e.g., Stern v.*

16     *On Time Freight Sys., Inc.*, 493 N.W.2d 348, 352 (Neb. Ct. App. 1992) ("In Nebraska, the

17     measure of damages in a breach of employment contract action is the amount of salary agreed

18     upon minus the amount the employee earned or, with reasonable diligence, could have earned

19     from another employer during the duration of the contract."); *Bourque v. Wausau Hosp. Ctr.*,

20     427 N.W.2d 433, 436 n.2 (Wis. Ct. App. 1988) ("Damages for breach of employment contract

21     are limited in Wisconsin to lost wages and expenses incurred in obtaining new employment.");

22     *Masterson v. Boliden-Allis, Inc.*, 865 P.2d 1031, 1035 (Kan. Ct. App. 1993) ("The proper

23

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—21
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

1   measure of damages in a breach of employment contract case is the amount of wages the

2   employee would have earned less the amount actually earned.").

3          Because Dr. Diederich cannot recover beyond his second-year contract, it follows, *ipso*

4   *facto*, that he cannot recover for his lost future earning capacity.  But, two additional grounds

5   support a denial of these damages.  First, they do not meet the rule that consequential damages

6   for breach must be reasonably foreseeable.  *See, e.g., Myrtle Springs Reverted Indep. Sch. Dist.*

7   *v. Hogan*, 705 S.W.2d 707, 710 (Tex. App. 1985) ("Actions for breach of employment

8   contracts do not allow recovery of damages for loss of earning capacity."); *accord Lindsey v.*

9   *University of Arizona,* 754 P.2d 1152, 1158 (Ariz. App. 1987) (holding that "[d]amages for

10  diminution in future earning power or capacity are not recoverable in an action for breach of an

11  employment contract.").  Second, lost earning capacity is a tort remedy, not a contract remedy.

12  *Myrtle Springs,* 705 S.W.2d at 710.  Absent an independent tort duty, which does not exist

13  here, Dr. Diederich is limited to his contract remedies.  *See Alejandre v. Bull*, 159 Wn.2d 674,

14  153 P.3d 864, 867 (Wash. 2007) ("The economic loss rule applies to hold parties to their

15  contract remedies when a loss potentially implicates both tort and contract relief."); *Eastwood*

16  *v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 241 P.3d 1256, 1262 (Wash. 2010) (holding that

17  in contract cases "[w]hen no independent tort duty exists, tort does not provide a remedy.").

18         The foregoing authority establishes that Dr. Diederich's contract damages are limited to

19  what Providence would have paid him for his remaining second-year contract minus the

20  damages he mitigated or could have mitigated, and Providence respectfully requests an order to

21  that effect.

22

23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

**E.**   **If the Court grants Providence's earlier motion for partial summary judgment, then it is appropriate to dismiss all the federal claims raised in this lawsuit on statute-of-limitation grounds.**

A plaintiff who sues under federal discrimination law must file an EEOC charge 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The time period is 300 days if the state where the discrimination occurred has an EEOC work sharing agreement, as Washington does. *See EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 112-113, 125 (1988); 29 C.F.R. § 1601.74(a). As it currently stands, then, Dr. Diederich had 300 days to file his charge. He filed on March 27, 2009, so he is time barred from suing for any discrimination or retaliation (though not harassment) that occurred before May 31, 2008. *See generally Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

This 300 day period, however, reverts to 180 days if the Court grants Providence's motion for partial summary judgment based on its exemption from the WLAD. *See generally MacDonald v. Grace Church Seattle*, 457 F.3d 1079 (9th Cir. 2006). If Providence is exempt, then Washington lacked jurisdiction over Dr. Diederich's discrimination claims. *Id.* at 1088. When the state lacks jurisdiction, the plaintiff must file an EEOC charge within 180 days. *Id.* Again, Dr. Diederich filed his charge on March 27, 2009. Under the 180 day rule, he cannot sue for claims that arose before September 28, 2008, which would effectively bar all his claims because he was terminated on September 12, 2008.

Thus, in the alternative, Providence asks the Court to dismiss all of plaintiff's federal claims as time barred if it grants Providence's earlier motion for partial summary judgment.

## IV.   CONCLUSION

For plaintiff's claims to survive summary judgment, a reasonable jury would have to believe in a vast conspiracy that is not supported by any evidence. It would have to believe that

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—23
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

1  plaintiff's initial failure at his first residency was the result of discrimination, not his

2  performance problems.  It would have to believe that plaintiff actually performed well at

3  Providence, despite documented issues that were similar to ones he had at Swedish.  It would

4  have to believe that Providence lacked an honest belief in its reasons for disciplining and

5  terminating plaintiff.  It would have to believe that plaintiff faced additional discrimination

6  from a second hospital.  It would have to believe that plaintiff's co-workers, supervisors,

7  advisors, the program director, the associate program director, the faculty, and the appellate

8  board conspired together to dismiss plaintiff for discriminatory reasons.  This is too much and,

9  like most conspiracy theories, plaintiff's case is long on speculation and short on proof.

10  Accordingly, the defendants' motion should be granted in its entirety.

11           DATED this 14th day of February, 2012.

12

13                                      Davis Wright Tremaine LLP
                                        Attorneys for Defendants Providence Health &
                                        Services - Washington dba Providence St. Peter
14                                      Hospital, Kevin Haughton, Maggie Miller, Lisa
                                        Johnson, Lowell Dightman, Michael Matlock and
15                                      Jennifer Playstead

16

17                                      By
                                           Paula L. Lehmann, WSBA #20678
18                                         Boris Gaviria, WSBA #31251
                                           777 108th Avenue NE, Suite 2300
19                                         Bellevue, WA  98004-5149
                                           Telephone:  (425) 646-6100
20                                         Fax:  (425) 646-6199
                                           Email:  paulalehmann@dwt.com
21                                         Email:  borisgaviria@dwt.com

22

23

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT—24
(CV-10-1558-RAJ)
DWT 18997760v2 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Cleveland Stockmeyer PLLC          Email:  cleve@clevelandstockmeyer.com


_____
Lynn Michel

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax