The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT J. DIEDERICH, individually,

               Plaintiff,

     v.

PROVIDENCE HEALTH & SERVICES -
WASHINGTON d/b/a PROVIDENCE ST.
PETER HOSPITAL,

              Defendant.

No. CV-10-1558-RAJ

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

NOTED FOR HEARING:
FRIDAY, JUNE 3, 2016

No Oral Argument Requested

## I.     INTRODUCTION

Nearly eight years ago, defendant Providence St. Peter Hospital ("Providence") removed plaintiff Dr. Robert Diederich from its family medicine residency program due to his longstanding and well-documented performance deficiencies.  During Dr. Diederich's first year of residency (R1), Providence frequently counseled him and placed him on a remediation program.  Because he showed some improvements in the Spring of 2008, Providence offered him a new contract for his second year (R2).[1]  But, Dr. Diederich quickly demonstrated significant new performance problems, a failure to take responsibility for his shortcomings, and

---

[1] This new contract was offered **after** Providence allegedly knew of the Swedish lawsuit, the sole protected activity at issue in this lawsuit.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 1
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

unsafe practices that compromised patient safety, all of which led to his removal from the residency program in his R2 year.

Dr. Diederich subsequently filed this lawsuit alleging a variety of claims against Providence and multiple individuals.  All individually named defendants have been dismissed and only one claim remains against Providence - retaliation under the Washington Law Against Discrimination ("WLAD") based on plaintiff's contention that he was removed from the Providence residency program in 2008 because he had filed a lawsuit against Swedish Medical Center ("Swedish") based on his removal from its residency program in 2006.[2]

In a previous motion for summary judgment before this Court (*see* Dkt. 51), Providence argued that it did not have knowledge of Dr. Diederich's 2006 lawsuit against Swedish and therefore plaintiff could not state a prima facie case on this claim.  This Court agreed, dismissing Dr. Diederich's retaliation claim on summary judgment as well as all other claims except breach of contract.  *See* Dkt. 100.  Dr. Diederich appealed and on August 5, 2015, the Ninth Circuit Court of Appeals granted his motion in part, finding that, when viewing the facts in the light most favorable to Dr. Diederich, he had set forth sufficient evidence to establish a prima facie case of retaliation, but affirming this Court's ruling in all other respects[3].  The Ninth Circuit did not discuss the burden-shifting analysis in its opinion but stated that "[t]he district court did not consider whether Providence stated a legitimate nondiscriminatory reason for disciplining, and ultimately terminating Diederich" and remanded the case for further proceedings.  *See* Dkt. 127.

---

[2] Dr. Diederich initially alleged three theories of retaliation.  The two others were dismissed by this Court, and that decision was affirmed on appeal.  *See* Dkt. 100, 127.

[3] In the Ninth Circuit Court of Appeals' decision, it acknowledged: "the district court denied Providence's motion to supplement the record with evidence showing it lacked knowledge that Diederich sued his former residency program and its director, and that it was 'not motivated by discriminatory animus.'"  *See* Dkt. 127 at 3.  The Court of Appeals also stated that "[b]ecause this issue was not decided by the district court and may require evaluation of additional evidence, we decline to consider it on appeal."  *Id.* at 3-4 (citing *U.S. Auto Parts Network, Inc. v. Parts Geeks, LLC,* 692 F.3d 1009, 1012 (9th Cir. 2012).  In support of this motion, Providence submits additional evidence not previously considered by this Court.  *See* Declaration of Katharine M. Tylee ("Tylee Decl."), Exs. A-G.  This additional evidence confirms Providence lacked knowledge of the Swedish lawsuit and, when considered along with all other evidence in the light most favorable to plaintiff, compels the conclusion that Dr. Diederich has failed to state a prima facie case of retaliation under the WLAD.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 2
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

On remand, even assuming Dr. Diederich could establish a prima facie case of retaliation; his claim under the WLAD still fails.  As discussed more fully below, Providence has set forth sufficient evidence to show that his termination from the residency program was due to legitimate nondiscriminatory reasons - specifically, his ongoing and well-documented performance deficiencies.  Dr. Diederich cannot establish that Providence's articulated reasons for his termination were merely pretext for discrimination.  To the contrary, undisputed evidence affirms that his R2 residency contract was offered to him after Providence allegedly knew of the lawsuit.  Accordingly, Providence respectfully requests that this Court grant summary judgment in favor of Providence and dismiss this last remaining claim with prejudice.

## II.    PROCEDURAL HISTORY

Plaintiff Dr. Diederich filed a lawsuit in King County Superior Court against Providence and numerous individually named defendants on July 30, 2010.  Defendants removed the case to federal court on September 28, 2010.  *See* Dkt. 1.  Plaintiff alleged seven claims against Providence: (1) breach of contract; (2) outrage; (3) interference with a business expectancy; (4) wrongful discharge in violation of public policy; (5) disability discrimination and retaliation under the WLAD and ADA; (6) age discrimination; and (7) antitrust violations, as well as claims against eight individual defendants, six of whom he served.  *See id.*

On May 6, 2011, this Court dismissed several of plaintiff's claims following Providence's motion to dismiss.  *See* Dkt. 15.  On September 26, 2012, this Court dismissed all but one of the remaining claims following Providence's motion for partial summary judgment.  *See* Dkt. 100.  The individual defendants have all been dismissed as parties to this action.[4]  Additionally, prior to appealing the decision on partial summary judgment, plaintiff voluntarily dismissed the sole surviving claim of breach of contract claim with prejudice.  *See* Dkt. 119.

---

[4] Given the Ninth Circuit's revival of plaintiff's WLAD retaliation claim, it is unclear whether the individual defendants are also reinstated.  Should Dr. Diederich take the position that the individual defendants remain part of the lawsuit, Providence requests that the Court dismiss all defendants with prejudice.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 3
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

Plaintiff subsequently filed a notice of appeal to the Ninth Circuit on June 4, 2013. *See* Dkt. 120.

On August 5, 2015, the Ninth Circuit issued its Order (Dkt. 127) affirming and reversing in part this Court's summary judgment order, finding that Dr. Diederich had stated a *prima facie* case of retaliation based on the prior Swedish lawsuit, but noting that the district court had not considered whether Providence stated a legitimate, nondiscriminatory reason for removing plaintiff from the residency program. *Id.* at 3-4. Accordingly, plaintiff's WLAD retaliation claim based on the prior Swedish lawsuit is the only remaining claim in this lawsuit.

## III.    FACTS

### A.    Providence St. Peter Hospital

Providence is a full-service hospital with 390 beds in Olympia, Washington.[5] It has a family medicine residency program that takes each resident three years to complete. Declaration of Kevin Haughton, MD, Dkt. 53, 78[6] at ¶ 2. There are 18 residents in the program, six in each year, and each successive year is referred to as R1, R2, and R3. *Id.* Each resident signs a series of one-year contracts. Plaintiff Robert J. Diederich was fifty-one years of age when he began as an R1 for Providence in June 2007. Complaint, ¶¶ 1, 17.

### B.    Swedish Termination and Lawsuit[7]

Before joining Providence as an R1 in 2007, Dr. Diederich had been a Swedish resident for eleven months. Dkt. 52, 76, Diederich Dep. 53:4-13.[8] Dr. Diederich claimed Swedish

---

[5] *See* Declaration of Mary Mertens in Support of Defendants' Motion for Partial Summary Judgment and Motion to Dismiss Individual Defendants, Dkt. 33, ¶ 2.

[6] The Court previously ordered both parties to resubmit declarations in relation to defendant's previous summary judgment motion. *See* Dkt. 73. To facilitate the Court's ability to easily locate evidence relied upon in this motion, defendant has cited to both the original declarations and exhibits and the supplemental declarations of Dr. Haughton and Boris Gaviria.

[7] As briefed earlier in this litigation (*see* Dkt. 51), plaintiff claims that Providence knew he had sued Swedish and that it retaliated against him by terminating his Providence residency. Since the Ninth Circuit found that Dr. Diederich had set forth sufficient evidence to establish a prima facie case of retaliation, these facts will not be repeated here. For purposes of this motion, Providence will assume that Dr. Diederich has established a prima facie case of retaliation under the WLAD and will focus on its legitimate and nondiscriminatory reasons for terminating Dr. Diederich from its residency program.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 4
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

terminated him while he was on leave for depression and "made something up about …

deficient performance." Dkt. 52, 76, Diederich Dep. 53:19-25.  After exhausting his internal

appeal rights with Swedish, Dr. Diederich sued Swedish in February 2006 for disability

discrimination and received approximately $145,000 as a settlement.  Dkt. 52, 76, Diederich

Dep. 55:2-15, 59:22-24.  The settlement agreement contained a confidential anti-disparagement

clause and required Sam Cullison, Swedish's Program Director, to keep the matter confidential

and to write a letter of recommendation for Dr. Diederich.  Dkt. 52, 76, Diederich Dep. 60:21-

61:10; *see also* Dkt. 52-1, Ex. B.

### C.   Plaintiff's Professionalism and Practice Issues at Providence.

Later that year, Dr. Diederich submitted Dr. Cullison's letter of recommendation and

listed him as a reference in his application to enter a new residency program as an R1 in family

medicine.  Dkt. 52, 76, Diederich Dep. 50:17-20; 63:20-25; Dkt. 53, 78 at ¶ 3, Ex. 1.

Dr. Diederich signed a one-year contract with Providence from June 18, 2007 until June 30,

2008.  *Id*., Ex. 2.  Within six months, Providence realized Dr. Diederich had serious issues with

his performance and lack of professionalism.  *Id*. at ¶ 4; Ex. 3.  Dr. Haughton and Dr. Miller

(his first-year advisor), met with Dr. Diederich on December 19, 2007 and recommended

remediation, a non-disciplinary, non-adversarial program for residents who need help.  *Id*. at

¶ 4; Exs. 3, 4, and 5; *see also* Dkt. 52, 76, Haughton Dep. 88:22-89:10.[9]  Dr. Miller identified

the following deficiencies at the meeting:  poor documentation, incomplete and unorganized

presentations, defensive attitude, deflection of blame, disrespectful remarks, and cynical

comments about the program.  *Id.*

Dr. Miller continued meeting with Dr. Diederich in Winter 2008, but performance

issues remained a concern.  Dkt. 53, 78, Exs. 6 and 7.  On February 28, 2008, the faculty

---

[8] Excerpts from the Deposition of Dr. Diederich ("Diederich Dep.") are attached as Exhibit A to the Declaration of Boris Gaviria ("Gaviria Decl."), dated 02/14/2012.  *See* Dkt. 52-1.
[9] Excerpts from the Deposition of Kevin Haughton ("Haughton Dep.") are attached as Exhibit C to the Gaviria Decl. dated 02/14/2012.  *See* Dkt. 52-1.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 5
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

decided that "these issues will now move into the Step 1 disciplinary process." *Id.*  Dr. Miller informed Dr. Diederich that he would be moving into the next level of the disciplinary procedure, gave Dr. Diederich a copy of Providence's disciplinary process, and told him that an Ad Hoc Advisory Committee would create its own remediation plan.  *Id.*  Dr. Diederich called in sick the next day.  *Id.*, Exs. 8-10.

The Ad Hoc Advisory Committee, consisting of Dr. Miller, Gregg VandeKieft and Wali Martin, met with Dr. Diederich.  They identified similar competency concerns, including poor professionalism, poor interpersonal skills, and poor communications.  *Id.*; Ex. 11.  Dr. Miller and others continued to work with Dr. Diederich but he continued to struggle.  Dkt. 53, 78 at ¶ 9, Ex 12.  In March 2008, Dr. Diederich abruptly left one day for emergency sick leave without adequately handing off his patients.  *Id.* at ¶ 10, Ex. 13.  In response to this serious and unusual incident and because of other concerns, Providence placed Dr. Diederich on probation. *Id.* at ¶ 11, Ex. 14.

Dr. Diederich substantially complied with his probation plan, and, in mid-May 2008, returned to "usual residence status" and Providence renewed Dr. Diederich's contract for a second year (R2).  *Id.* at ¶ 14, Ex. 16, 17.  At the end of June 2008, DelRene Davis became his new advisor and Lisa Johnson, an Assistant Program Director, partly took over Dr. Haughton's responsibilities when he was unavailable.  Dkt. 52, 76, Diederich Dep. 95:13-15; Dkt. 53, 78 at ¶ 15; Dkt. 52-1, Johnson Dep. 20:13-21:8.[10]

Providence's concerns about Dr. Diederich's performance issues and patient safety concerns surfaced again, first as part of his quarterly review and later about professionalism issues that led to "unacceptable patient care."  Dkt. 53, 78 at ¶ 16, Exs. 18 and 19.  On July 5, contrary to hospital policy, he abandoned his duty as an R2 to admit a patient and made an R1 do it instead.  *Id.* at ¶ 17, Ex. 20; Dkt. 52, 76, Diederich Dep. 104:17-105:12.

---

[10] Excerpts from the Deposition of Lisa Johnson ("Johnson Dep.") are attached as Exhibit D to the Gaviria Decl. dated 02/14/2012.  *See* Dkt. 52-1.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 6
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

On July 23, faculty met and raised concerns about "his functioning within the program," specifically his unprofessionalism and problems interacting with co-workers. Dkt. 53, 78 at ¶ 18, Ex. 21.  They considered placing Dr. Diederich on probation, but instead placed him on Step 1.  Providence created a second Ad Hoc Advisory Committee and another remediation plan for Dr. Diederich.  *Id.* at ¶ 19, Ex. 22.

### D.       Plaintiff's Termination and Appeal.

Throughout the summer of 2008, Providence continued to try and work with Dr. Diederich to help him acquire the necessary skills and guidance to be a successful physician.  However, due to serious risks to patients, Providence could no longer take a chance on Dr. Diederich to safely continue in its residency program.  In late August and early September 2008**,** new issues arose, which led to Dr. Diederich's termination from the residency program.  Dkt. 53, 78 at ¶ 20, Exs. 23 and 24.

### 1.       Obstetrical Laceration Repair on Precipitous Delivery.

On August 30, 2008, Dr. Diederich and a second resident examined a patient who had just given birth, noting that she required obstetrical laceration repair.  Dr. Diederich did not follow proper protocol and failed to notify his attending physician of the needed repair, despite the charge nurse's reminder that he needed to do so.  *Id.*; Dkt. 52, 76, Diederich Dep. 224:4-25.  During the same procedure, Dr. Diederich failed to use sterile gloves, did not recognize the need for sterile gloves, and, even after being asked to do so by the charge nurse, refused to change into sterile gloves.  Dkt. 53, 78, Ex. 23; Dkt. 52, 76, Diederich Dep. 228:24-229:6.  Dr. Diederich's failure to follow proper procedure compromised the patient's safety and increased risk of infection.

### 2.       Pediatric Respiratory Distress Admission.

On September 2, 2008, an infant patient was admitted with respiratory distress at approximately 5:00 PM.  Dkt. 53, 78, Ex. 24.  Dr. Diederich failed to follow up on the admission for approximately six hours.  *Id.*  Fortunately the patient did well throughout the

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 7
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

night; however, a six-hour delay greatly compromised the patient's safety and resulted in delayed treatment.

### 3. Providence Terminates Dr. Diederich from the Residency Program.

Following the long and continued pattern of poor behavior coupled with his most recent violations of hospital policies and risks he imposed to patient safety, Providence terminated Dr. Diederich from the residency program on September 12, 2008.  Dkt. 53, 78 at ¶ 22, Exs. 25-27.  At his termination meeting, Providence gave Dr. Diederich a copy of its Disciplinary and Due Process Policy and notice of his right to appeal.  *Id.*  Providence terminated Dr. Diederich because of his "ongoing behavior which interferes with [his] ability to provide patient care."  *See* Dkt. 53, 78, Ex. 26, Discharge Notice.  Additionally, Providence listed the pediatric respiratory distress admission and the obstetrical laceration repair incident as specific examples of his ongoing performance issues as those were the culminating events that led to his termination.  *Id.*

### 4. Dr. Diederich Appeals His Termination.

Dr. Diederich appealed the termination decision.  Dkt. 53, 78, Ex. 28.  His appellate board included Jennifer Playstead, Michael Matlock, Lowell Dightman, Lori Van Zanten, and Geoffrey Ankeney.  *Id.*  As part of the process, the appellate board asked for additional documents and factual clarification related to his ongoing performance and professionalism issues.  Dkt. 53, 78 at ¶ 24, Ex. 29.  After reviewing all the circumstances, the appellate board upheld his termination by a vote of four-to-one and issued a five-page report of their findings.  *Id.* at ¶ 25, Ex. 30.  The appellate board's decision reflected both his recent incidents of risking patient safety as well as his ongoing performance and professionalism issues.

### IV. ARGUMENT AND AUTHORITY

Dr. Diederich cannot refute the legitimate business reasons for his termination nor can he show with direct or circumstantial evidence that Providence's numerous and well-

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 8
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

documented reasons for his termination were merely pretext for retaliation because he had filed an earlier lawsuit against Swedish.

Undisputed evidence shows that for a period of nine months, Providence worked with Dr. Diederich on his noted performance deficiencies including:  informal counseling, remediation, creation of Ad Hoc committees, and probation.  Providence spent numerous hours and hospital resources in an attempt to help Dr. Diederich be a successful resident and physician.

Moreover, it makes no sense that Providence would engage in such thorough and thoughtful procedures, holding various meetings over a period of nine months, all as pretext for ending Dr. Diederich's residency because he had filed a lawsuit years earlier.[11]  It is particularly noteworthy that Providence offered Dr. Diederich a second residency contract in May 2008 for his R2 year despite the performance problems in his R1 year and *after* Providence allegedly knew of the Swedish lawsuit.  Had Providence wished to retaliate against Dr. Diederich, it could have simply declined to offer a contract for his R2 year.  Instead, Providence gave him yet another opportunity to succeed.  When that failed, Providence decided to remove him from the residency program.

### A.    Prima Facie Case of Retaliation.

To establish a prima facie case of retaliation under the WLAD, plaintiff must establish that: (1) he engaged in statutorily protected activity, (2) Providence took adverse employment action against him, and (3) there is a causal connection between the protected activity and the discharge.  *Corville v. Cobarc Servs., Inc.*, 73 Wn. App. 433, 439, 869 P.2d 1103, 1105 (1994).  Although Providence believes that plaintiff will not be able to establish a prima facie case of retaliation at trial, the Ninth Circuit Court of Appeals has determined that when the evidence in the record is considered in the light most favorable to Dr. Diederich, there is sufficient evidence

---

[11] Providence disputes it even had knowledge of Dr. Diederich's earlier lawsuit.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

to set forth a prima facie claim of retaliation based on the lawsuit against the prior residency

program.  *See* Dkt. 127.

**B.    Dr. Diederich's Termination Claim Fails Because Legitimate Nondiscriminatory Reasons Support Termination from the Residency Program**

Assuming Dr. Diederich established a prima facie case, the burden then shifts to

Providence to articulate a "legitimate, nondiscriminatory reason for termination."  *Grimwood v.*

*University of Puget Sound, Inc.*, 110 Wn.2d 355, 364, 753 P.2d 517 (1988).  Importantly,

Providence's burden at this stage is "not one of persuasion, but rather a burden of production.

To go forward, the employer need only articulate reasons sufficient to meet the prima facie

case."  *See id.* (citing *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 360 n. 46,

97 S. Ct. 1867 n. 46, 52 L.Ed.2d 396 (1977) (discussing nature of evidence necessitated by the

employer's burden of production.)  "Once the employer fulfills [its] burden of production, to

create a genuine issue of material fact the plaintiff must satisfy his ultimate burden of

persuasion and show that the employer's articulated reasons are a mere **pretext** for what, in

fact, is a discriminatory purpose."  *See id.* (citing *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1011–

12 (1st Cir. 1979).

Providence has established legitimate, nondiscriminatory reasons for Dr. Diederich's

termination based on evidence that cannot be disputed.  Providence terminated Dr. Diederich

due to his longstanding and well-documented performance deficiencies and risks to patient

safety. [12]  During Dr. Diederich's residency, Providence frequently counseled him on his

deficiencies but Dr. Diederich failed to take responsibility for his shortcomings and his

behavior ultimately led to unsafe practices, and compromised patient safety.

---

[12] Indeed, Dr. Diederich admitted that he had performance issues:  "Q.  What was the first performance deficiency that was brought to your attention after May 15, 2008?  A.  After May 15th.  That I was behind in some administrative duties, paperwork basically.  Q.  Who told you that?  A.  I believe Dr. Miller.  Q.  Was it true?  A. Yes."  Diederich Dep. 88:14-21, attached as Exhibit H to the Tylee Declaration.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 10
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

Dr. Diederich can produce no persuasive or relevant evidence to dispute the allegations that he compromised patient safety on two separate occasions and violated Providence policies. His termination was well-documented and considered carefully by the decision makers and then again by the appeal board.  Over a period of nine months, Providence addressed Dr. Diederich's deficiencies directly with him through informal counseling, remediation, Ad Hoc committees, and probation.  Providence expressed a willingness to assist him in reaching his goals and correcting his behavior and even renewed his contract for a second year when Dr. Diederich had temporarily shown some improvement in Spring 2008.

Similar to *Grimwood*, "[t]he legitimacy of defendant's reasons for discharging plaintiff are bolstered by the fact that the complaints were stated in writing long before plaintiff's termination, by the fact that some complaints about his performance came from those under plaintiff's supervision rather than only from the person with authority to discharge, and by the fact that defendant relied, in part, on objective events. . . . Defendant had also warned plaintiff six months before his termination that continued substandard performance in the designated areas would be cause for dismissal." *Grimwood,* 110 Wn.2d at 365.  Importantly, this Court has already found, in the context of the now-dismissed WLAD claims of discrimination, that plaintiff's "well-documented history of practice and professionalism issues" demonstrated a legitimate basis for discharge that shifted the burden back to plaintiff to show pretext.  *See* Dkt. 100 at 8:22-27.  This determination was not addressed in the appeal and remains the law of the case. *See* Dkt. 127; *see also Grimwood,* 110 Wn. 2d 355.

Finally, it is important to note that the family medicine residency program is an educational experience and the decision to remove a physician from such a program is an academic decision ill-suited to review by a jury.  *See A-Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355, 360 (6th Cir. 2015) (holding that decision to dismiss medical student for lack of professionalism was academic judgment); *Knapik v. Mary Hitchcock Mem'l Hosp*., 90 F. Supp. 3d 292, 300 (D. Vermont, Feb. 3, 2015) ("Courts have consistently held that the dismissal of a

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 11
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

resident for poor clinical performance is an academic decision.") (cases cited); *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 90 (1978) (medical resident's dismissal was academic decision despite being based in part on erratic attendance).  Providence's decision to remove Dr. Diederich from the residency program is supported by abundant legitimate reasons that should not be disturbed.

### C.    Dr. Diederich Cannot Show Pretext

Given the legitimate reasons for removal of Dr. Diederich from the residency program, the burden shifts to him to demonstrate that the reasons are pretextual.  As noted in this Court's decision on summary judgment, Dr. Diederich bears the burden of demonstrating pretext in one of two ways:  either "directly by persuading the court that a discriminatory reason more likely motivate the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Dkt. 100 at 9:1-7.  Here, this Court has already determined that "plaintiff has not provided even minimal evidence demonstrating pretext" in the context of his discrimination claims. *Id.* at 10:2.  These findings were not reversed on appeal.  *See* Dkt. 127.

Here, the same analysis when applied to the sole remaining claim of retaliation yields the same result.  There isn't a scintilla of evidence supporting pretext – either direct or indirect[13].  Plaintiff must show "a sufficient factual basis to support a genuine issue of material fact that his discharge was motivated by a discriminatory purpose rather than the reasons articulated by the defendant."  *Grimwood*, 110 Wn.2d at 365.  Conclusory opinions by Dr.

---

[13] Swedish and Providence raised nearly identical concerns with Dr. Diederich's performance as a resident, which underscores the absence of any pretext here.  *See* Fed. R. Evid. 401.  First, Dr. Diederich's blame shifting and other unprofessional conduct (name calling) are both reflected in the appeal letter he wrote to the Swedish residency program:  "I am convinced that the real reason I failed OB was because I had the temerity as a 49-year-old grown-up to tell Dr. Joe Breunder that the evaluation written by the fellow Dr. Courtney Lando was 'bullshit.'"  *See* Tylee Decl., Ex. G.  Similarly, at Providence, in an email to Dr. Haughton and others, Dr. Diederich referred to his advisor (behind her back) as "mean spirited and cruel." Dkt. 53, 78, Ex. 32.  Second, Dr. Diederich was also told by Swedish that "you have shown no consistent behavior change … that would indicate that you have any insight into your lack of professionalism."  *See* Tylee Decl., Ex. F.  Providence also noted Dr. Diederich's lack of meaningful participation in his own remediation plan.  *See, e.g.,* Dkt. 53, 78, Ex. 14 (citing, among other things, unwillingness to collaborate, failure to repair relationships, "[l]ack of participation and engagement in this remediation process," not completing self-evaluation after several reminders, and not providing supervisors with feedback forms); Dkt. 53, 78, Ex. 19 (noting that Dr. Diederich was cavalier and "unconcerned" about being on discipline because, as he said, "'I've been there before.'").

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 12
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA 98004-5149
425.646.6100 main · 425.646.6199 fax

Diederich are insufficient to meet this burden and that is all that is offered here.  Dr. Diederich has failed to set forth admissible and material facts establishing direct evidence of retaliation sufficient to create a genuine issue of pretext.

Providence's decision to continue to work with Dr. Diederich by entering into a second residency contract after Providence allegedly knew about the Swedish lawsuit confirms the complete and utter absence of pretext.  Here, Dr. Diederich has testified that statements made to him in December 2007 demonstrated that Dr. Haughton had knowledge of the Swedish lawsuit at that time and thereafter Providence engaged in retaliation.[14]  But, Providence's decision to extend the R2 contract to Dr. Diederich five months after purportedly learning of his protected activity is patently inconsistent with this argument.  Where, as here, the defendant offers to renew the contractual relationship after allegedly knowing of the protected activity, the chain of causation is broken and there is nothing to demonstrate that the proferred reason for removal from the residency program is unworthy of credence.  Had Providence wished to remove Dr. Diederich from the residency program because of his prior lawsuit against Swedish, it need only have declined to offer him a second one year residency agreement.

No reasonable juror would conclude that Providence retaliated against Dr. Diederich because of his prior lawsuit against Swedish, or for any other reason.  Summary judgment should be granted here.

## V.   CONCLUSION

Plaintiff's one remaining claim is not supported by the evidence and is properly dismissed.  Providence has articulated legitimate nondiscriminatory reasons for Dr. Diederich's termination from its residency program.  Specifically, Dr. Diederich's demonstrated ongoing performance deficiencies that put patients at risk.  Although Providence offered Dr. Diederich

---

[14] However, Dr. Haughton was unavailable during this time and Lisa Johnson was the interim Program Director. Dkt. 53, 78, ¶ 15.  Dr. Haughton was not present at the faculty meeting that memorialized Dr. Diederich's termination. Dkt. 53, 78, Ex. 25.  Furthermore, even if Dr. Haughton and Dr. Miller knew of the Swedish lawsuit, Dr. Diederich has provided no proof that his R2 advisor (DelRene Davis) or the interim Program Director, Lisa Johnson, knew of the lawsuit.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 13
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

additional time for performance improvement with a renewal of his R2 contract, he did not

demonstrate sustained improvement that warranted continuation in the residency program.  As

a result, his R2 contract was terminated, a decision that had absolutely nothing to do with a

lawsuit he filed against Swedish Medical Center years before.  Providence respectfully requests

that this Court grant summary judgment and dismiss Dr. Diederich's remaining claim of

retaliation with prejudice.

　　　　DATED this 10th day of May, 2016.

Davis Wright Tremaine LLP
Attorneys for Defendant Providence Health &
Services - Washington dba Providence St. Peter
Hospital

By /s/ Paula L. Lehmann
　　/s/ Boris Gaviria
　　/s/ Katharine M. Tylee
　　Paula L. Lehmann, WSBA #20678
　　Boris Gaviria, WSBA #31251
　　Katharine M. Tylee, WSBA #40640
　　777 108th Avenue NE, Suite 2300
　　Bellevue, WA  98004-5149
　　Telephone:  (425) 646-6100
　　Fax:  (425) 646-6199
　　Email:  paulalehmann@dwt.com
　　Email:  borisgaviria@dwt.com
　　Email:  katetylee@dwt.com

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 14
(CV-10-1558-RAJ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lish Whitson        Email:  lish.whitson@whitsonlaw.com

Kristy Stell        Email:  kristy.stell@whitsonlaw.com

Randy Baker         Email:  bakerlaw@drizzle.com


_Amanda McFadden_
Amanda McFadden

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2
(13-CV-00521-TSZ)
DWT 29369203v1 0016924-000150

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2300
777 108th Avenue NE
Bellevue, WA  98004-5149
425.646.6100 main · 425.646.6199 fax