THE HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

ROBERT J. DIEDERICH, individually,

11

Plaintiff,

No. CV-10-1558-RAJ

12

v.

ORDER

13

14
15

PROVIDENCE HEALTH & SERVICES -
WASHINGTON d/b/a PROVIDENCE ST.
PETER HOSPITAL, et al.

16

Defendant.

17

18

**I. BACKGROUND**

19      In 2004, Dr. Diederich graduated from the University of Washington School of

20  Medicine.  Dkt. # 64 (Diederich Decl.) ¶ 4.  Dr. Diederich started his residency in

21  family medicine at Swedish Hospital under director Dr. Sam Cullison.  *Id.* ¶ 5.  Dr.

22  Cullison terminated Dr. Diederich, claiming he had bad performance.  *Id.*  Dr. Diederich

23  sued Swedish and Cullison claiming they discriminated against him based on disability

24  due to a temporary, severe depressive episode.  *Id.*  In 2006, Dr. Diederich obtained a

25  resolution of the lawsuit, and Dr. Cullison wrote him a recommendation that he used to

26  apply to Providence's residency program.  *Id.*  Dr. Diederich began his residency at

ORDER-1

Providence in July 2007.  *Id.* ¶ 6.  Beginning in January 2008 and continuing through his termination, Dr. Diederich received a number of memoranda citing patient care and professionalism issues.  Dkt. # 64-1 (Exs. 10-15, 21, 23 to Diederich Decl.).  Dr. Diederich appealed his termination pursuant to the grievance procedure, and the appeals panel upheld the termination.  Dkt. # 53-1 (Ex. 30 to Haughton Decl.).

Dr. Diederich filed this lawsuit alleging, among other things, that Providence discriminated against him on the basis of age and disability and retaliated against him for engaging in protected activity.  Dr. Diederich believes the patient care and professionalism issues cited in the memoranda and termination letter were pretextual.

This Court granted summary judgment in Providence's favor with regard to Dr. Diederich's claims for retaliation, wrongful termination, and tortious interference.  Dkt. # 100.  Dr. Diederich subsequently dismissed his breach of contract claim before appealing this Court's order to the United States Court of Appeals for the Ninth Circuit. Dkt. ## 119, 120.  The Ninth Circuit reversed this Court's summary judgment order on Dr. Diederich's state retaliation claim[1] because it found that Dr. Diederich had successfully established a prima facie case for retaliation.  Dkt. # 127.  The Ninth Circuit remanded the case to this Court to examine whether Providence could meet its burden to show that it had a legitimate, nondiscriminatory reason for terminating Dr. Diederich, and whether Dr. Diederich could meet his burden to show that Providence's reason was nonetheless pretextual.  *Id*.

## II. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

---

[1] Dr. Diederich alleged his retaliation claim against the individual defendants. The Ninth Circuit reversed this Court's Order granting summary judgment, and therefore the state claim is reinstated as against the individual defendants.

ORDER-2

Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

**A.      Retaliation under Washington's Law Against Discrimination (WLAD).**

The WLAD prohibits an employer from taking an adverse employment action against an employee based on protected conduct.  *Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 374, 112 P.3d 522 (2005) (citing RCW 49.60.210); *see also Stegall v. Citadel Broad. Co*., 350 F.3d 1061, 1065-1066 (9th Cir. 2003) (finding that Washington courts look to federal law when analyzing retaliation claims, and utilizing the three-part burden shifting test described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in statutorily protected activity, (2) defendants took some adverse employment action against her, and (3) there is a causal connection between the protected activity and the discharge.  *Stegall*, 350 F.3d at 1065-1066; *Corville v. Cobarc Servs., Inc.*, 869 P.2d 1103, 1105 (Wash. Ct. App. 1994).  If a

plaintiff establishes a prima facie case, the evidentiary burden shifts to the employer to produce admissible evidence of a legitimate, nondiscriminatory reason for the discharge. *Stegall*, 350 F.3d at 1066; *Hollenback v. Shriners Hospitals for Children*, 206 P.3d 337, 344 (Wash. Ct. App. 2009). If the employer meets its burden, the presumption is removed and the employee must then establish a genuine issue of material fact as to pretext. *Stegall*, 350 F.3d at 1066; *Hollenback*, 206 P.3d at 344.

On appeal, the Ninth Circuit found that Dr. Diederich successfully established a prima facie claim that Providence retaliated against him based on his lawsuit against his former employer and residency program director. Dkt. # 127. Thus, Providence must prove that it had a legitimate, nondiscriminatory reason for terminating Dr. Diederich. If Providence is successful in that regard, Dr. Diederich must prove that Providence's actions were nonetheless a pretext for a retaliatory purpose.

1. Providence's Legitimate, Nondiscriminatory Reasons.

Providence must articulate a legitimate, nondiscriminatory reason for terminating Dr. Diederich to overcome the presumption of retaliation. Providence's burden is one of production, and not one of persuasion. *Grimwood v. Univ. of Puget Sound*, 753 P.2d 517, 521 (Wash. 1988). In other words, Providence "need only articulate reasons sufficient to meet the prima facie case." *Id*. Here, Providence clearly met this burden. Dr. Diederich's supervisors noted many deficiencies in his practice beginning in at least December 2007, and the hospital worked with Dr. Diederich over the course of several months to cure the deficiencies to no avail. In its termination letter, Providence explained to Dr. Diederich that it was terminating his residency due to "ongoing behavior which interfere[d] with [his] ability to provide safe patient care." Dkt. # 53-1 (Ex. 26 to Haughton Decl). Providence went on to list three specific events leading to the termination, namely that Dr. Diederich failed to follow up on a pediatric admission

after being asked to do so, failed to notify the attending of an obstetrical laceration repair on a certain patient, and failed to follow medical hygiene protocol by using sterile gloves during a procedure.  *Id*.  Providence's Appeals Board submitted a report affirming the termination.  Dkt. # 53-1 (Ex. 30 to Haughton Decl.).  In its report, the Appeals Board found ten additional conclusions of fact that supported Providence's decision to terminate Dr. Diederich from the program.  *Id*.  Neither the reasons that Providence asserted in its original termination letter nor the reasons the Appeals Board proffered subsequent to its review were discriminatory in nature.  Providence met its burden to show that it had legitimate, nondiscriminatory reasons for terminating Dr. Diederich from the residency program.

    2.  <u>Providence's Reasons were Pretextual.</u>

Providence met its burden to produce evidence showing that it had legitimate, nondiscriminatory reasons for terminating Dr. Diederich, and therefore Dr. Diederich now carries the ultimate burden of persuasion to "show that [Providence's] articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose."  *Grimwood*, 753 P.2d at 364; *see also Scrivener v. Clark Coll.*, 334 P.3d 541, 546 (Wash. 2014) ("Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose.").  Dr. Diederich may prove pretext "by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer."  *Scrivener*, 334 P.3d at 546.

There are various ways for a plaintiff to show pretext within the context outlined above, such as showing "that the [legitimate, nondiscriminatory reason] has no basis in fact, it was not really a motivating factor for the decision, it lacks a temporal connection

ORDER-5

to the decision[, it] was not a motivating factor in employment decisions for other employees in the same circumstances . . . [or] by proving that discrimination was a substantially motivating factor in the employment decision." *Id*. at 547; *see also Hollenback*, 206 P.3d at 344 (finding that although the plaintiff "need not show that retaliation was the only or 'but for' cause of the adverse employment action, [he] must establish that it was at least a substantial factor.").

Dr. Diederich claims that, in mid or late December 2007, Dr. Haughton, the director of the family medicine residency program, told Dr. Diederich that Dr. Haughton had "learned all about [him]." Dkt. # 64, ¶ 59. A short time later, Dr. Haughton told Dr. Diederich that Dr. Haughton "spoke with Sam Cullison," the program director at Swedish. *Id*. at ¶ 61. On December 19, 2007, Dr. Haughton and Dr. Miller recommended remediation for Dr. Diederich, and thereafter began the documented timeline of events associated with Dr. Diederich's decline in the program at Providence. Dkt. # 148, at p. 5. The temporal proximity between Dr. Haughton's alleged knowledge of the prior suit and the beginning of the disciplinary period that led to termination is a factor that supports a finding of pretext. *See Hollenback*, 206 P.3d at 344 ("One factor supporting a retaliatory motive is a close proximity in time between the protected activity and the employment action."). To be sure, Dr. Diederich presented evidence tending to show that prior to December 2007 his supervisors found that his work met or exceeded expectations. Dkt. # 156, Ex. 1. Only after his supervisors allegedly learned about the lawsuit did Dr. Diederich begin to experience disciplinary actions that eventually led to his dismissal. *See Sims v. Lakeside Sch*., No. C06-1412RSM, 2008 U.S. Dist. LEXIS 54004, *17-18 (W.D. Wash. 2008) ("A plaintiff can establish that the employer acted with an improper motive if there is proximity in time between the adverse action and the protected activity, coupled with evidence of

satisfactory work performance and supervisory evaluations.") (internal quotations omitted).  A jury could conclude that Dr. Diederich's prior lawsuit against Swedish was a substantial reason for his termination from Providence's residency program.

Both Providence and Dr. Diederich presented competing evidence that could allow for similarly competing inferences. As such, this evidence is appropriate for a jury to weigh and resolve.  *See Sambasivan v. Kadlec Med. Ctr.*, 2012 Wash. App. LEXIS 2484, *15 (Wash. Ct. App. 2012) ("In this circumstance, where both parties have presented competing evidence and inferences to be drawn therefrom, it is appropriate for the trier of fact to resolve the issue."); *see also Stegall*, 350 F.3d at 1072 (finding that the standard is low when evaluating whether the defendant's articulated reason is pretextual); *Sims*, 2008 U.S. Dist. LEXIS 54004, at *23 ("If there is any indication of discriminatory motive, summary judgment for the defendant will ordinarily not be appropriate on any ground.") (internal quotations omitted).

### III. CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion for summary judgment.


Dated this 18th day of July, 2016.



*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge




ORDER-7